IN THE UNITED STATES DISTRICT COURT
                             FOR THE DISTRICT OF KANSAS

CATHERINE DAVISON,

                    Plaintiff,

vs.                                              Case No. 11-1226-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


                              MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

## I.  General legal standards

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On October 8, 2010, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 10-19). Plaintiff alleges that she has been disabled since July 1, 1996 (R. at 10); however, supplemental security income is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335. Plaintiff filed her application for benefits on May 12, 2008 (R. at 10). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since

4

plaintiff's application date of May 12, 2008 (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine status/post surgical repair, anxiety, and polysubstance abuse in claimed remission (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining that plaintiff has the RFC to perform simple unskilled sedentary work (R. at 15), the ALJ determined at step four that plaintiff has no past relevant work (R. at 18). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 18-19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III.  Did the ALJ err by failing to discuss plaintiff's obesity?**

Plaintiff points to medical records of her height and weight, which indicated that plaintiff was consistently obese in 2009 and 2010 based on the Body Mass Index (BMI) (Doc. 16 at 7-8). Plaintiff also noted that Dr. Hsu, in a report dated February 16, 2009 stated that plaintiff "is overweight" (R. at 345). Finally, plaintiff notes that she indicated in a written report that "my weight gain increases the pain" (R. at 149). Another medical note from September 14, 2008 states that plaintiff is overweight, with a BMI of 28.5 (R. at 245). Plaintiff alleges that the ALJ erred by failing to consider

plaintiff's obesity in his decision.  Defendant agrees that the ALJ did not mention obesity in his decision (Doc. 21 at 9).

SSR 02-1p is a social security ruling governing the evaluation of obesity.  It states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions.  Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment.  Obesity may also affect the claimant's ability to sustain a function over time.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  2002 WL 32255132 at *7.  The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

In order to establish obesity as a medically determinable impairment, the Commissioner relies on the judgment of physicians who have examined the plaintiff, as well as plaintiff's height and weight.  In most cases, the Commissioner will use his judgment to establish the presence of obesity based on medical findings and other evidence in the case record.  2002 WL 32255132 at *4.

In Briggs v. Astrue, 221 Fed. Appx. 767, 770-771 (10th Cir.

Apr. 9, 2007), plaintiff's physicians noted plaintiff's obesity in several reports. However, none of plaintiff's physicians indicated that obesity was a factor in regard to exertional, postural and social functions, and plaintiff did not testify that his weight contributed to his inability to engage in activities in any way. The court held that, based on this evidence, plaintiff's contention of error on the part of the ALJ for failing to specifically identify obesity as a severe impairment at step two was found to be without merit.

In the case of <u>Callicoatt v. Astrue</u>, 296 Fed. Appx. 700, 702 (10th Cir. Oct. 20, 2008), the claimant alleged that the ALJ erred by failing to consider plaintiff's obesity. However, claimant pointed to no evidence in the medical record, or in her hearing testimony, showing that her obesity exacerbated her other impairments. The court held that without some evidence that her obesity was relevant to her other alleged impairments during the relevant time frame, the ALJ was not required to consider the claimant's obesity.

Finally, in <u>Fields v. Barnhart</u>, 83 Fed. Appx. 993, 997 (10th Cir. Dec. 30, 2003), claimant argued that the ALJ failed to adequately consider plaintiff's obesity and its impact on her other ailments, daily activities, and ability to work. However, the court held that claimant failed to cite to any specific record evidence to show that this impairment in any way affected

her ability to engage in basic work activities.

Although plaintiff was identified as overweight in two medical reports, no medical report indicates that plaintiff's obesity was a factor in regard to exertional, postural or social functions. Even Dr. Khan's RFC findings on December 28, 2010 do not mention obesity as a factor in plaintiff's limitations; he never even mentioned that plaintiff was obese or overweight (R. at 418-425). At no time when Dr. Khan treated plaintiff did he mention that she was obese or overweight (R. at 309-330). The only indication of any impact from her weight was plaintiff's statement that any weight gain increases her pain (R. at 149). At the hearing, plaintiff, when asked if there was anything wrong with her other than her back, answered, "No, its my back" (R. at 30). Later in her testimony, she simply noted her weight gain (R. at 35-36). Dr. Siemsen, after reviewing the records in the case (including plaintiff's statements and some of the medical records), stated in his RFC findings that plaintiff's allegations of back pain were credible, and that significant limitations from the back pain were partially credible (R. at 268). The ALJ made RFC findings even more limiting than those in Dr. Siemsen's report by limiting her to sedentary work; the ALJ indicated that he was giving some credibility to plaintiff's testimony of back pain causing limited capacity for lifting, standing, and walking (R. at 17).

In summary, none of plaintiff's physicians indicated that obesity was a factor in regard to exertional, postural or social functions, or that it exacerbated her other alleged impairments, or that her obesity affected her ability to engage in basic work activities. Furthermore, although plaintiff indicated that weight gain increased her pain, Dr. Siemsen found plaintiff's allegations of back pain to be credible, and that significant limitations from the back pain were partially credible. In addition, the ALJ made RFC findings more restrictive than those contained in Dr. Siemsen's report, stating that he gave some credibility to her testimony regarding back pain and therefore limited her to sedentary work. Plaintiff does not take issue with the ALJ's credibility findings. On these facts, the court finds that the ALJ did not err by failing to specifically mention plaintiff's obesity.

**IV. Did the Appeals Council err in their consideration of RFC opinions expressed by Dr. Khan?**

The ALJ decision in this case was issued on October 8, 2010 (R. at 19). On December 28, 2010, 2 and ½ months after the ALJ decision, Dr. Khan provided an RFC assessment (R. at 421-424) indicating that plaintiff could stand and/or walk for only 10-15 minutes in an 8 hour workday, and that she could only stand and/or walk while holding onto something. Furthermore, he opined that plaintiff could sit for only 15 minutes in an 8 hour

9

workday, and could never climb, balance, stoop, kneel, crouch or crawl (R. at 423). The Appeals Council made this decision part of the record (R. at 4). In the Appeals Council decision on June 13, 2011, it indicated that they reviewed the additional evidence, but "found that this information does not provide a basis for changing the Administrative Law Judge's decision" (R. at 2). Plaintiff argues that the ALJ failed to provide specific, legitimate reasons for rejecting Dr. Khan's opinion.

Plaintiff's challenge is without merit. The case law requires only that the Appeals Council consider properly submitted evidence that is new, material, and temporally relevant. If, as happened here, the Appeals Council explicitly states that it considered the evidence, there is no error, even if the order denying review includes no further discussion. The court takes the Appeals Council at its word when it declares that it has considered a matter. Martinez v. Astrue, 389 Fed. Appx. 866, 868-869 (10th Cir. Aug. 3, 2010). While an express analysis of the Appeals Council's determination would have been helpful for purposes of judicial review, claimant pointed to nothing in the statues or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review. Martinez v. Astrue, 444 F.3d 1201, 1207-1208 (10th Cir. 2006); see Bowles v. Barnhart, 392 F. Supp.2d 738, 743-745 (W.D. Va. 2005)(which provides an thorough and persuasive analysis of

the reasons that the Appeals Council does not have to provide substantive explanations when they deny review).

However, the court must consider the qualifying new evidence submitted to the Appeals Council when evaluating the Commissioner's denial of benefits under the substantial evidence standard. Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003); O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994). The court will examine both the ALJ's decision and the additional findings of the Appeals Council. This is not to dispute that the ALJ's decision is the Commissioner's final decision, but rather to recognize that the Commissioner's "final decision" includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence. O'Dell, 44 F.3d at 859. The district court's very task is to determine whether the qualifying new evidence upsets the ALJ's disability determination, Martinez, 389 Fed. Appx. at 869, or whether the new evidence submitted to the Appeals Council provides a basis for changing the ALJ's decision. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).

First, Dr. Khan's report is dated December 28, 2010, 2 ½ months after the ALJ decision of October 8, 2010. His report does not state whether his opinions relate back to the period on or before the date of the ALJ decision. In fact, Question #5 of the report asks the person filling out the form to indicate the

11

"earliest date that the description of each of the symptoms and limitations in this questionnaire applies" (R. at 424). Dr. Khan failed to answer that question. A report prepared 2 ½ months after the ALJ decision, which does not purport to retroactively indicate a person's impaired functioning relating back to the period of the decision, can serve as a basis for a court to affirm the ALJ decision despite the new evidence. Krauser v. Astrue, 638 F.3d 1324, 1329 (10th Cir. 2011).

Second, the report from Dr. Khan also includes a question which states as follows:

> 4D. It is VERY IMPORTANT that you provide the following:
> Briefly list the exams, test results, imaging and other clinical, laboratory, and/or visually observable findings (including pain) from which the related capacities and limitations indicated in 4.A., B., and C. above were concluded.

(R. at 424). Dr. Khan failed to answer the question, thus providing the Appeals Council with absolutely no explanation of the basis for his findings. By contrast, Dr. Siemsen's RFC assessment referenced MRI test results, and findings from an exam on October 3, 2008 in support of his RFC findings (R. at 268).

Third, Dr. Khan was asked in Question # 4G the following:

> Briefly list which restricted activities noted above that you are aware of solely based on Patient's subjective complaints:
>
> [Answer by Dr. Khan]: uses legs/feet

(R. at 424). Thus, Dr. Khan provided no exams, test results,

12

imaging, or other clinical, laboratory, and/or visually observable findings (including pain) in support of the limitations he set forth in his report, but did rely, at least to some extent, on plaintiff's subjective complaints when setting forth his opinions regarding plaintiff's limitations. The ALJ, in his decision, found that plaintiff's subjective complaints were not fully credible (R. at 16-18); plaintiff has not contested the ALJ's credibility findings.

Fourth, the record indicates that some of the limitations contained in Dr. Khan's report are not consistent with the medical reports and plaintiff's own statements. Dr. Khan limited plaintiff to standing and/or walking for 10-15 minutes, while holding onto something, during an 8 hour day. Dr. Kahn also limited plaintiff to sitting for only 15 minutes in an 8 hour workday (R. at 423). As noted by the ALJ (R. at 17), a medical report from May 6, 2007 (when plaintiff complained of back pain to a hospital emergency department) states that plaintiff had "no trouble walking," "no history of radiating pain," and "no lower extremity weakness" (R. at 231). Another report on March 11, 2009 states that plaintiff "was able to ambulate independently and was pacing around the office" (R. at 392). As the ALJ indicates, both reports indicate that plaintiff is able to stand and walk longer than she alleges (R. at 17). They also do not support Dr. Khan's opinions that she can only stand and/or walk

for 10-15 minutes, and then only if holding onto something. Furthermore, plaintiff's own primary care provider stated on January 30, 2009 that he questioned exactly how painful her lower back is because she does not follow through with her appointments that are felt as prudent (R. at 412).

Plaintiff also testified that she occasionally attends church, goes grocery shopping and goes to garage sales (R. at 31, 38). The ALJ relied on this testimony by the plaintiff when evaluating plaintiff's ability to sit, stand, and walk (R. at 16). These activities do not support the severe restrictions set forth by Dr. Khan.

For all of the reasons set forth above, the court finds that th new evidence from Dr. Khan is not sufficient to upset the ALJ's disability determination. The court finds that the ALJ's disability determination is supported by substantial evidence.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 19th day of September, 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge